Nov. Term, 1851.

THE NORTH-ERN INDIANA RAILROAD COMPANY v. THE MICHI-GAN CENTRAL RAILROAD COMPANY.

(1) Local Laws of 1842, p. 37.    (2) 1 Carter's Ind. R. 62.    (3) 2 Carter's Ind. R. 644.    (4) R. S. 1843, p. 788, s. 9.

---

THE NORTHERN INDIANA RAILROAD COMPANY and Others *v.* THE MICHIGAN CENTRAL RAILROAD COMPANY and Others.

Monday, November 24.

THE motion to which the following remarks of judge *Smith* are applicable, was decided at the last term of the Court, and the opinion of the *Court* may be found in 2 Carter's Ind. R. 670. Judge *Smith*, who granted the order extending the operation of the appeal, to discharge which order was the object of said motion, proceeded, on the first day of the present term, to read the following remarks:

SMITH, J.—Motion to set aside an order extending the operation of an appeal, taken from the decision of the president judge of the *Laporte* Circuit Court granting an injunction.

Nov. Term
1851.

THE NORTH-
ERN INDIANA
RAILROAD
COMPANY
v.
THE MICHI-
GAN CENTRAL
RAILROAD
COMPANY.

Having, at the time this motion was argued, announced an intention to give, at a convenient opportunity, my views in writing upon the questions raised by it, I will now proceed to do so.

On the 28th of *August* last, the appellees, having previously filed a bill of complaint in the *Laporte* Circuit Court, applied to the president judge thereof, in vacation, for an injunction to restrain the appellants from constructing a railroad over certain land and across the railroad of the appellees, and from building or using a railroad from *Michigan City* to the west line of the state, running parallel with the railroad of the appellees. The case is now in this Court on an appeal from the order of the president judge granting such an injunction.

The 70th section of c. 37, R. S., p. 636, authorizes an appeal to be taken from any interlocutory order or decree of a Circuit or Probate Court granting or dissolving an injunction; but the 72d section provides that such an appeal " shall not stay the proceedings in the Court below upon such order or decree," for a longer time than thirty days, " unless the Supreme Court in term, or some judge thereof in vacation, shall make an order to the effect that such order or decree be stayed."

Two subsequent acts, one passed in 1845, and another in 1849, give authority to any judge of the Supreme Court to order a *supersedeas* either in term time or in vacation.

On the 22d of *September*, an order, such as is contemplated by the 72d section of the statute above quoted from, was made by me upon the application of the appellants. The members of the Court had, at that time, separated. I was at a distance from my colleagues, and having no opportunity to consult with them, the order was made without any participation on their part.

On the 23d of *October*, the judges of this Court met, at

Nov. Term,
1851.

THE NORTH-
ERN INDIANA
RAILROAD
COMPANY
v.
THE MICHI-
GAN CENTRAL
RAILROAD
COMPANY.

the request of the counsel for the appellees, to hear a motion to have the order so made set aside. The motion was based upon the following propositions:

1st. That this Court was still in session, the term which commenced in *May* last not having been ended by a final adjournment; and, therefore, a single judge had no authority to make the order in question.

2d. That a rule of this Court required the record to be filed in the clerk's office before the order was made, which was not done.

3d. That the appeal was void, and this Court had no jurisdiction of the cause.

Counsel representing the appellants were present when this motion was offered to be made, but they refused to enter an appearance or to consent to its being heard. On the contrary, they, as friends of the Court, insisted that the appellants could not be required to appear and show cause against such a motion at that period of the term. Consequently, a question was raised as to whether the motion of the appellees could then be entertained.

There are two terms of the Supreme Court in each year. Each term is to consist of thirty days, unless the business shall be sooner disposed of, and may be enlarged beyond that time if the Court shall deem it expedient and necessary.

The practice of the Court is to meet at the court room at the commencement of each term, and continue its sittings there from day to day, so long as the parties or their counsel have any business to bring before it. During these sittings, the docket is called for the purpose of enabling either party to require the appearance of his adversary, and to take such steps as may be deemed requisite or necessary in the absence of his opponent, if the latter fails to appear. Usually, it is not found necessary to continue the sittings of the Court, for these purposes, more than two or three weeks, and the ordinary routine of business in Court being then terminated, the suitors and members of the bar in attendance from different parts of the state disperse and return to their homes.

Nov. Term, 1851.

THE NORTH-
ERN INDIANA
RAILROAD
COMPANY
v.
THE MICHI-
GAN CENTRAL
RAILROAD
COMPANY.

The judges, however, continue to meet at their chambers to examine the cases submitted, and to consult upon their decisions; and it has been found convenient to enlarge the terms or continue the Court in session for the purposes of receiving petitions for rehearing, rendering judgments on submitted cases, entering orders by the consent of the parties, and hearing and determining such matters as could properly be presented *ex parte*. It has, indeed, grown to be the practice to keep the Court constantly open for these purposes, and for many years the final order of adjournment at each term has been made on the *Saturday* preceding the *Monday* on which the next term commenced. But it has always been understood that, after the Court had ceased to meet at the court room from day to day, no parties could be compelled to appear during the remainder of the term, and no business could be transacted without the consent of all the parties entitled to be heard. There is no rule of Court to that effect, but this understanding has been constantly acted upon both by the Court and bar, and a different course could not now be adopted with propriety.

The counsel of the appellees were, therefore, informed that, as the Court could not, consistently with the uniform practice, at that period of the term, require the appearance of the adverse party, a motion upon which such party would be entitled to be heard could not then be entertained; and that, so far as this motion was founded on an alleged want of jurisdiction in this Court, it was, in the opinion of the judges, of that character. The motion being then argued as one of an *ex parte* nature, it was, after giving the subject a careful consideration, overruled.

It is provided in the same chapter of the Revised Statutes before quoted (s. 36, p. 632,) that no writ of error shall " stay or supersede" execution on the judgment of the inferior Court, unless the Supreme Court in term, or a judge thereof in vacation, after inspecting the errors assigned on the record, shall make an order to that effect; which order shall be indorsed by the clerk of the Supreme

Nov. Term,
1851.

THE NORTH-
ERN INDIANA
RAILROAD
COMPANY
v.
THE MICHI-
GAN CENTRAL
RAILROAD
COMPANY.

Court on the writ of error. In our practice, a writ of error is seldom or never issued, the statute making it sufficient for the plaintiff in error to file in this Court a transcript of the proceedings in the inferior Court, with an assignment thereon of the errors upon which he intends to rely. It therefore becomes necessary that the inferior Court should be informed of the order of the Supreme Court, or of one of the judges, that the proceedings on error shall " stay or supersede" execution, by some other mode than by indorsement on the writ of error, and this is usually done by the clerk of the Supreme Court sending down what is called a writ of *supersedeas*. This is a conditional writ, and becomes operative upon the filing, by the plaintiff in error, of a bond similar to that required in cases of appeal.

The statute also provides (s. 40) that upon the granting of an appeal, the appeal-bond " shall operate to stay and supersede execution, and all other proceedings on the judgment or determination appealed from, in the Court below, from the time of taking such appeal, in like manner and for the same length of time as is provided in cases of writs of error." Here then is no necessity for a writ of *supersedeas* to issue from the Supreme Court, the appeal-bond being filed in the Court from which the appeal was taken, and being made to operate of itself as a *supersedeas*.

That the statute gives precisely the same effect to the bond in cases of appeal, as to the *supersedeas* granted in cases of writs of error, is still more apparent from the 41st section, which commences with these words:

" The filing and approval of the appeal-bond, or bond to stay and supersede execution in case of a writ of error, shall operate to stay and supersede execution until the final determination of such writ of error or appeal," &c.

In truth, the prosecution of a writ of error is only another mode of taking an appeal. An appeal, technically so called, must be taken at the term at which the judgment of the inferior Court is rendered; but, by means of the writ of error, an appeal from such a judgment may

Nov. Term, 1851.

THE NORTH-
ERN INDIANA
RAILROAD
COMPANY
v.
THE MICHI-
GAN CENTRAL
RAILROAD
COMPANY.

be taken at any time within five years. The legislature has, however, thought proper to place this check upon the removal of causes to a higher Court when the dissatisfied party has not, immediately on the decision against him, manifested his determination to do so by an appeal, that he shall not afterwards have the execution of the judgment delayed, while he is making his application to the superior Court for its reversal, without first submitting the errors he complains of to that Court, or one of the judges, and procuring an order to that effect. In other respects there is no material difference in their operation and effects between an appeal and a writ of error.

What has been thus far said of appeals has been in reference to appeals from final judgments. When an appeal is taken from an interlocutory judgment, the statute interposes a check similar to that just noticed. The appeal operates as a *supersedeas* exactly as in other cases of appeal from final judgments, but it continues so to operate only thirty days, unless an order is made by the Supreme Court or one of the judges similar to that required in cases of writs of error.

We were, therefore, of opinion that an order to extend the operation of an appeal from an interlocutory judgment, such as was made in the present case, is in its nature precisely similar to an order granting a *supersedeas;* that it is in fact a *supersedeas* within the meaning and intent of the statute; and as, by the acts passed in 1845 and 1849, the power to grant a *supersedeas* is given to a single judge in term time as well as in vacation, it was unnecessary to examine whether, at the time the order in question was made, there was or was not, practically, such a vacation of the Court as would have authorized a single judge to make the order under the provisions of the 72d section of the 37th chapter of the Revised Statutes.

The rule of Court referred to by the appellee, is one made to facilitate business while the Court is holding its sessions at the Court room, and has no bearing upon the present case.

Nov. Term,
1851.

The North-
ern Indiana
Railroad
Company
v.
The Michi-
gan Central
Railroad
Company.

The third and last argument urged by the counsel for the appellees in support of their motion was, that the statute does not authorize an appeal to be taken from the judgment of a judge, rendered in vacation, until the next term of the Circuit Court, and this appeal, having been taken immediately upon the rendition of the judgment, is void; wherefore the order granting a *supersedeas* is also void, this Court having no jurisdiction of the case. It was contended that it is the duty of the Court or judge, when examining a record presented to obtain a *supersedeas*, to see that the case is one that comes within the jurisdiction of the Supreme Court, and if it does not, a *supersedeas* ought not to be granted.

My understanding of the object of the statute in requiring an application for a *supersedeas* to be made in such cases, is, that the Court or judge may be satisfied before the further proceedings in the Court below shall be delayed, that the errors assigned are not frivolous, but present some question that may be worthy of investigation. A *supersedeas* is never denied unless it appears, plainly and palpably, that the questions raised are immaterial, or that they have been heretofore finally settled, or that the cause has been brought up merely for delay. When the application is made to a single judge, it is not the usual practice to consult with the other judges upon the propriety of granting it, unless the alleged errors appear so palpably untenable that the judge to whom the application is made, thinks, at first sight, that a *supersedeas* ought to be refused. In that case, the other judges are usually consulted, lest by the hasty decision of one member of the Court, the plaintiff in error might be improperly deprived of his rights. If the *supersedeas* is granted, the interests of the opposite party are protected by the bond required to be filed, and his judgment, if it be a correct one, is only temporarily delayed; but by the refusal to grant a *supersedeas*, the plaintiff in error, if the judgment should be in fact erroneous, may be deprived of the remedy which the law contemplates he should have, and for the want of which he might be irreparably injured.

Hence it is deemed necessary to be more careful and cautious in the refusal than in the granting of a *supersedeas*.

It not unfrequently happens that, in addition to the questions raised upon the proceedings of the inferior Court, there are others relative to the jurisdiction of this Court, and these are often of a most difficult and delicate character. I think that these questions of jurisdiction should be viewed like any others, and if there is a clear and palpable want of jurisdiction, we should be authorized to refuse a *supersedeas*, but if there should be any doubt on that subject the consideration of it must necessarily be deferred until the parties can be heard and deliberate decision be made by the Court. It could not have been the intention of the legislature that decisions of such difficulty and importance as these would often be, should be made in an off-hand manner by a single judge.

There has been no instance, within my knowledge, of an order granting a *supersedeas* having been set aside upon the ground of a want of jurisdiction of the cause. Motions to dismiss an appeal or writ of error for want of jurisdiction, have been common. The want of jurisdiction may be urged either upon such a motion or upon the final hearing of the cause, but, according to our practice, the question, in either case, must be submitted when the parties are regularly in Court, or by consent; it being one upon which both parties are considered entitled to be heard.

In the present case it is not denied that the questions involved in the controversy between the parties are important. That relating to the jurisdiction of this Court, is also one of considerable importance, in various points of view, and, to my apprehension, it is not so clear that no valid appeal was taken, that I should consider myself at liberty to refuse a *supersedeas* on that ground. The granting of a *supersedeas* is not, however, in any case, to be considered as an intimation of an opinion upon the questions presented by the record. If it intimates anything it is only that they are of sufficient importance to merit a

Nov. Term, 1851.

THE NORTH-
ERN INDIANA
RAILROAD
COMPANY
v.
THE MICHI-
GAN CENTRAL
RAILROAD
COMPANY.

hearing of the parties and the consideration of the Court, and nothing more is now intended to be said or intimated, as to any of the questions presented by this case.